IN THE COURT OF APPEALS OF THE STATE OF OREGON

Pacific Bio Products - Warrenton, LLC, fka Bio-Oregon Protein, Inc.,
Petitioner,

v.

Oregon Environmental Quality Commission,
Respondent.

Environmental Quality Commission No. WQ/I-NWR-2022-031

Court of Appeals No. A186173

**ORDER GRANTING STAY**

In this judicial review proceeding, petitioner seeks review of a final order issued by respondent Environmental Quality Commission (EQC), which upheld National Pollutant Discharge Elimination System (NPEDS) Permit No. 101804 issued by the Oregon Department of Environmental Quality (DEQ) in 2022 with which petitioner is required to comply in order to continue operating its fish and shellfish processing plant in Warrenton, Oregon.  Petitioner moved for and was denied a stay by DEQ.  *See* ORS 183.482(3) (providing for agency stay of final order pending completion of judicial review).  Petitioner now seeks review of that denial, requesting that this court stay enforcement of EQC's final order pending judicial review.  *See* ORS 183.482(3)(d) (agency denial of a stay is subject to review by the court); ORAP 4.30 (a motion for review of an agency's denial of a stay shall include all documents that the party believes to have been considered by the agency in its decision on the request for a stay and any other documents the party considers relevant).

Petitioner has operated its facility in Warrenton since the 1940s.  According to petitioner, the facility "uses an innovative process to turn otherwise-unusable byproduct of harvested bottom fish, shrimp, and crab (like bone, carcass, and shells) into nutrient-rich animal and plant food."  The facility conducts two types of seafood processing: of bottom fish (in particular, Pacific whiting) and of crab and shrimp shells.  According to petitioner, the facility "employs 17–20 people in the offseason and approximately 35 people during its busiest time of year."  To process the fish and shellfish, the facility draws water from the Columbia River, at the mouth of the Pacific Ocean, and, after using it in the processing, it discharges the water back into the Columbia River.  This discharged water—that is, "effluent"—includes substances that the Environmental Protection Agency (EPA) has deemed are pollutants.

As petitioner states, "to discharge responsibly and lawfully, [it] is required to comply with [NPDES] permits, which are issued by DEQ[,]" under the federal Clean Water Act of 1972.  The Clean Water Act imposes effluent limitations that include technology-based effluent limitations (TBELs).  According to respondent, "TBELs are the minimum level of control that must be imposed in a permit issued under the NPDES

ORDER GRANTING STAY

Exhibit 3
Page 1 of 5

program" and are set by DEQ permit writers either by "using EPA's national effluent limitations guidelines (ELGs)" or "where there are no applicable ELGs, on a case-by-case basis using the permit writer's Best Professional Judgment" by considering the factors listed in 40 CFR § 125.3(d), "the same factors EPA considers when it sets ELGs."

Petitioner's Warrenton facility has operated under NPDES permits for decades; the most recent prior one was issued by DEQ in 2007.  In 2012, petitioner applied for a permit renewal from DEQ.  The renewed NPDES permit was issued by DEQ in 2022, which is the permit at issue in this case.  The permit contains TBELs that limited the discharge of certain pollutants.

Petitioner initiated a contested case proceeding to challenge the 2022 permit. *See* ORS 183.411 to 183.471.  The Administrative Law Judge (ALJ) assigned to the matter presided over a four-day hearing held from February 28 through March 3, 2023. The ALJ issued a proposed order on October 17, 2023; that order affirmed all provisions of the permit.  Petitioner then sought administrative review by EQC pursuant to OAR 340-011-0575.  On review, EQC issued the final order adopting the ALJ's proposed order on October 9, 2024, allowing DEQ's 2022 permit to go into effect.  Petitioner initiated this judicial review proceeding by filing a petition from EQC's October 9 final order on December 6, 2024.

Soon after, on December 9, 2024, petitioner sought a stay from DEQ, which denied that request by order issued January 8, 2025.  Petitioner now moves, under ORS 183.482(3)(d), for review of the DEQ's stay order, requesting that this court "stay the Permit and Final Order pending the resolution of judicial review."

Pursuant to ORS 183.482(3), although the filing of a petition for review does not automatically stay enforcement of the agency order on review, a stay shall be granted upon a showing of irreparable injury to the petitioner and a colorable claim of error in the order on review, unless substantial public harm will result if the order is stayed.  Here, petitioner asserts that it meets the statutory requirements to obtain a stay; respondent opposes the request for a stay, asserting that petitioner has not shown a colorable claim of error or irreparable injury.  In addition, respondent asserts that substantial public harm will result if a stay is granted.  For the reasons set forth below, the court grants a stay of enforcement of the final order pending completion of judicial review.

The court begins by considering whether petitioner has shown a colorable claim of error in the agency order.  To satisfy the requirement to show a colorable claim of error, the party moving for a stay must "(1) assert that it is entitled to have the agency order set aside, modified, reversed, or remanded on one or more of the grounds specified in ORS 183.482(8), and (2) show that the assertion is substantial and nonfrivolous, or seemingly valid, genuine, or plausible, under the circumstances of the case." *Bergerson v. Salem-Keizer School District*, 185 Or App 649, 660, 60 P3d 1126 (2003).  On review of an agency denial of a motion to stay, the agency's determination

**ORDER GRANTING STAY**

Exhibit 3
Page 2 of 5

of whether a petitioner "has shown a colorable claim of error is not entitled to special deference from this court." *Id.* at 662.

Here, petitioner argues, among other things, that the TBELs "in the Permit are contrary to law, outside DEQ's authority and an abuse of DEQ's discretion, and unsupported by substantial evidence and reason." In particular, petitioner argues in part that "DEQ first erred by setting TBELs for [petitioner's] bottom fish processing based on pre-set EPA ELGs that, as a matter of law, do not apply to [it]." According to petitioner, DEQ applied ELGs created for "menhaden on the Gulf and Atlantic Coasts and * * * anchovy on the West Coast" to it even though it does not process those species." *See* 40 CFR § 408.150. It argues that, "[a]s a matter of law, the Menhaden/Anchovy ELGs apply *only* to the specified category, not to facilities [like petitioner's] that process other species." (Emphasis in original.).

Petitioner is correct that the ELGs in question are, by the plain text of 40 CFR § 408.150, "applicable to discharges resulting from the processing of menhaden on the Gulf and Atlantic Coasts and the processing of anchovy on the West Coast into fish meal, oil and solubles." Respondent, however, argues that DEQ did not "directly" apply those ELGs. Instead, it says, "DEQ followed accepted procedures set forth in EPA's regulations and NPDES Permit Writer's Manual to evaluate whether [petitioner's] processes are so similar to those evaluated during the ELG development process that application of the ELGs was appropriate."

The parties appear to agree that, where the EPA has not promulgated applicable ELGs, then TBELs must be set on a case-by-case analysis using the permit writer's best professional judgment, 40 CFR § 125.3(c), by considering the factors listed in 40 CFR § 125.3(d). Here, however, respondent argues that it "began a case-by-case" analysis and then "ceased this process and applied the [Menhaden/Achovy] ELGS promulgated by the EPA after concluding the Facility's processes and the nature of its wastewater were similar to the facilities" covered by those ELGs. (Quoting ALJ Order at 12-13.). As for respondent's assertion that DEQ's process is supported by the NPDES Permit Writer's Manual, petitioner points out that, even if the manual supports what DEQ did in this case (which petitioner disputes), "the U.S. Supreme Court has made clear that agency documents like the Manual should not be considered when—as here—the regulation is unambiguous[,]" citing *Christensen v. Harris County*, 529 US 576, 588, 120 S Ct 1655, 146 L Ed 2d 621 (2000).

Having reviewed those arguments, the court is persuaded that petitioner has raised a colorable claim of error here. As noted, to state a colorable claim of error, petitioner must raise an argument that is "seemingly valid, genuine, or plausible, under the circumstances of the case." *Bergerson*, 185 Or App at 660. Petitioner's argument meets that standard. Thus, although, "after briefing, oral argument, and a more complete review of the record," the court "may or may not determine" that the order is subject to reversal, the court concludes that petitioner has established a colorable claim of error. *Id*. at 662.

**ORDER GRANTING STAY**

Exhibit 3
Page 3 of 5

Next, under ORS 183.482(3), to obtain a stay pending completion of judicial review, petitioner must make a showing of irreparable injury. For purposes of obtaining a stay in this context, the court has explained, an injury is "irreparable if the party cannot receive reasonable or complete redress in a court of law" and a showing "must at least demonstrate that irreparable injury *probably* would result if a stay is denied." *Bergerson*, 185 Or App at 660 (internal quotation marks omitted; emphasis in original). Whether injury is irreparable depends not upon the "magnitude of the injury, but upon the completeness of a remedy in law." *Arlington Sch. Dist. No. 3 v. Arlington Ed. Assoc.*, 184 Or App 97, 102, 55 P3d 546 (2002) (internal quotation marks omitted).

Petitioner argues that it will be irreparably injured if a stay is not granted. It argues that "barging effluent to sea—DEQ's sole suggestion for how [petitioner] could comply with the Permit—is simply not possible at [its] Facility. Meanwhile, any other alternatives for compliance involve fundamentally and irreversibly changing [petitioner's] Facility and business model, if not shutting down entirely." Respondent, for its part, argues that petitioner's irreparable injury argument fails because "petitioner did not present the evidence it now relies on during the permit development process, the permit comment period, or at the contested case to show that it would be financially ruinous, technically impossible, or unduly dangerous to comply [with] the proposed permit terms." Having reviewed the material submitted by petitioner in support of its argument that it will suffer irreparable injury in the absence of a stay, the court is persuaded that petitioner has made the required showing. Further, the court rejects respondent's contention that petitioner's evidence comes too late or that, to the extent that petitioner's argument is that the irreparable harm comes from the terms of the permit itself, it does not constitute harm "from the denial of the stay." Petitioner has made a sufficient showing of irreparable harm to support a stay pending completion of judicial review.

As noted, under the statute, if a petitioner shows irreparable injury and a colorable claim of error, a stay "shall" be granted unless substantial public harm will result from the stay. Here, respondent argues that such substantial public harm will result because "petitioner will continue to discharge pollutants in violation of state water quality standards if the stay is granted." Petitioner, for its part, asserts that its discharge of effluent "has a negligible impact on the Columbia River given that it discharges at the mouth to the Pacific Ocean, where the river is approximately three miles wide and has a flow rate of 123 million gallons per minute." Furthermore, petitioner argues, the substances it discharges "come from Oregon waters and are merely discharged back into the river by [it] at a point source," and studies it has commissioned indicate that its "effluent may *improve* the health of animal and plant life at the bottom of the river near the outfalls." (Emphasis in original.). In any event, according to petitioner, the sole harm identified by respondent "cannot be a viable basis for denying a stay, as it assumes the very conclusion that [petitioner] challenges in this [judicial review proceeding]—that the limits in the Permit are valid." Having reviewed the parties' arguments, the court agrees with petitioner. The mere fact that, if a stay is granted, the limits set forth in the permit will not be enforced, does not show substantial public harm;

**ORDER GRANTING STAY**

respondent has pointed to nothing from which the court could conclude that substantial public harm will result if a stay is granted.

For those reasons, on review, the court concludes that it is appropriate to grant petitioner's motion; the EQC's final order is stayed pending completion of judicial review.

Respondent requests that, in the event that the court grants a stay, the judicial review be expedited. Petitioner opposes that request, arguing that it would "unnecessarily constrain the time in which [petitioner's] counsel has to cogently and succinctly brief the many substantial and complex issues in this case (and the time the Court has to decide them)." In petitioner's view, the time that has already elapsed during the agency proceedings is "primarily due to the lackadaisical pace" of the agency:

> "After the record closed in the contested case hearing, the ALJs then took half a year just to render a decision, and after that, the EQC delayed even further by declining to hear [petitioner's] case for four months after briefing was complete. And all this came after DEQ took *nearly 10 years* to issue the Permit in response to [petitioner's] renewal application submitted in 2012—five initial years for DEQ to even begin the permit-writing process, and more than four additional years to actually issue the Permit (for reference, NPDES permits last for terms of only five years)."

(Emphasis in original.).

Under the circumstances, the court is not persuaded that the judicial review should be expedited. That request, contained in the response, is denied.

Theresa Kidd
Appellate Commissioner
4/8/2025

c:  Misha Isaak
Benjamin Gutman
Alex Van Rysselberghe
Carson L Whitehead

**ORDER GRANTING STAY**

Exhibit 3
Page 5 of 5